**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| KENTON DeVRIES,<br><br>          Plaintiff,<br><br>vs.<br><br>PIONEER WIRELINE<br>SERVICES, LLC, f/k/a PIONEER<br>LOG-TECH, LLC, a Delaware<br>Limited Liability Company, and<br>JOHN DOES I-V,<br><br>          Defendants. | CV 14-123-BLG-SPW-CSO<br><br><br>**FINDINGS AND<br>RECOMMENDATION OF<br>UNITED STATES<br>MAGISTRATE JUDGE** |

Plaintiff Kenton DeVries ("DeVries") filed this action for declaratory relief and damages against his employer, Defendant Pioneer Wireline Services, LLC ("Pioneer"). DeVries invokes the Court's diversity jurisdiction under 28 U.S.C. § 1332.

In his Amended Complaint (*Am. Cmplt. Pet. for Declaratory Judgment and Jury Demand (ECF 3)*), DeVries seeks:

> *Count One* – a declaration that his employment agreement's non-compete and non-disclosure clause is invalid and unenforceable;

> *Count Two* – a declaration that Pioneer's breach of the agreement's double-bonus provision precludes Pioneer from enforcing the non-disclosure and non-compete clause; and

*Count Three* – payment of double bonuses under the travel clause of his employment agreement (Count Three).

.

Now pending is DeVries' motion for summary judgment on all claims. *Mtn. for Summary Judgment (ECF 20).* For the reasons set forth below, the Court recommends that DeVries' motion be denied.

## I. <u>BACKGROUND</u>[1]

### A. <u>DeVries' Employment Agreement with Pioneer</u>

DeVries has been a wireline engineer for nearly two decades. In 2004, he was an owner in Prairie Investors ("Prairie"), d/b/a Competition Wireline Services and Competition Wireline Services, Inc. ("Competition Wireline"), based out of Billings, Montana.

On February 29, 2008, DeVries and Prairie entered into an Employment Agreement ("Agreement").[2] There are no amendments or addendums to the Agreement outside of those produced in Exhibit A (*ECF 5-1*) to the Amended Complaint. Also on February 29, 2008, Prairie was sold to Pioneer Log-Tech, LLC, which, a few days later,

---

[1]The Court compiled the background facts that follow from the pleadings, DeVries' Statement of Undisputed Facts (ECF 22), and Pioneer's Statement of Disputed Facts (ECF 26). The facts stated here and in the "Discussion" section are undisputed except where indicated.

[2]DeVries attached a copy of the Agreement to his Amended Complaint as Exhibit A. See ECF 5-1 at 1-15.

changed its name to Pioneer Wireline Services, LLC ("Pioneer").

Pioneer now owns all assets previously owned by Prairie. DeVries still

works for Pioneer.

### B. The Agreement's Non-compete and Other Restrictive Covenants Provision

The Agreement, Section 10, titled "Non-compete and Other

Restrictive Covenants," states, in part, as follows:

> Employee agrees that the Company's business is by nature a
> nationwide business, and that the Company's business,
> services, research and products do not require the Company
> to maintain a physical location close to its customers.
> Employee further acknowledges that the skills, processes
> and information developed at the Company could be utilized
> directly and to the Company's detriment with any other
> competing business anywhere in the nation. Accordingly,
> for the consideration described in this Agreement and other
> good and valuable consideration the sufficiency and receipt
> of which is hereby acknowledged, Employee agrees to be
> bound by the following restrictive covenants. EMPLOYEE
> FURTHER AGREES THAT THE DURATION, SCOPE,
> AND TERRITORIAL RESTRICTIONS PROVIDED IN THE
> RESTRICTIVE COVENANTS PROVIDED IN THIS
> SECTION 10 ARE REASONABLE AND IMPOSE NO
> GREATER RESTRAINT THAN IS NECESSARY TO
> PROTECT THE COMPANY'S GOODWILL AND OTHER
> IMPORTANT BUSINESS INTERESTS. EMPLOYEE
> FURTHER ACKNOWLEDGES THAT ABSENT THE
> AGREEMENT OF EMPLOYEE TO THE TERMS OF THIS
> SECTION 10, COMPANY WOULD NOT EMPLOY
> EMPLOYEE. ...
>
> Employee expressly agrees and undertakes that ...

(v) From the date of this Agreement through one (1) year
after the termination of his Employment whenever
occurring and for whatever reason ... Employee shall not ...
(A) engage in any business activity (including selling any
products or providing any services) in competition with the
Company within any Territory (as hereinafter defined), or
(B) solicit any business from, or provide any services to, any
of the customers or accounts of the Company or its Affiliates
or (C) become the employee of, or otherwise render services
to or on behalf of, any enterprise which competes directly
with the business of the Company or its Affiliates. ...
"Territory" will include (A) the city, town or village in which
any sales or service facility of the Company is or may be
located ... (B) the county or parish in which any Facility is
located, (C) the counties or parishes contiguous to the county
or parish in which any Facility is located, (D) the area
located within 350 miles of any Facility, (E) the area in
which any Facility regularly provides products or services at
the locations or project sites of its customers, and (F) the
states of Montana, North Dakota, South Dakota, and
Wyoming, as applicable.

(vi) From the date of this Agreement through ... one (1) year
after termination of his employment ... Employee shall not
directly or indirectly ... (i) solicit the business of any Person
known to Employee to be a customer of the Company,
whether or not Employee had personal contact with such
Person, with respect to products or services which compete
in whole or in part with the products or services of the
Company, or (ii) induce or attempt to induce any customer,
supplier, licensee or business relation of the Company to
cease doing business with the Company, or in any way
interfere with any relationship between the Company and
any customer, supplier, licensee or business relation of the
Company.

*ECF 5-1 at 5-7* (capitalization and emphasis in original).

## C. The Agreement's Bonuses Provision

The Agreement, Section 3, titled "Compensation," provides, relevant to this action, as follows:

> Employee shall also be entitled to bonuses as described in Addendum B to this Agreement.

*ECF 5-1 at 2.*

> Addendum B to the Agreement provides in relevant part:

> Employee shall be eligible to receive job-based bonuses consistent with past practices of the Company, including double-bonuses for jobs involving a round trip commuting distance of more than 600 miles from the duty station to the job site.

*Id. at 14.*

DeVries received double bonuses from March 2008 until February 13, 2011, when the bonuses stopped. As discussed in more detail below, respecting the period between February 13, 2011, and August 28, 2013, the parties dispute whether DeVries is entitled to unpaid bonuses in the total amount of $118,148.26 for trips he allegedly took to job sites requiring round trip commuting distances of more than 600 miles.

Shortly after August 28, 2013, DeVries transferred to Dickinson, North Dakota. From Dickinson, DeVries no longer traveled the required distances to earn double-bonuses.

**D.    Other Provisions in the Agreement**

The Agreement states that Montana law applies.  The Agreement allows for attorneys fees and costs for the prevailing party in any litigation "in relation" to the Agreement.

## II.    SUMMARY OF THE PARTIES' ARGUMENTS

In seeking summary judgment on his claim that the Agreement's non-compete clause is invalid and unenforceable, DeVries argues that: (1) the non-complete clause is a full or absolute restraint on trade because it would prevent him from working for a year in almost all oil-producing states in the nation, including in the area in which he has lived for fifteen years, *DeVries' Opening Br. (ECF 21) at 5-6*; (2) Pioneer has no legitimate business interest in preventing him from competing with Pioneer because his present job gives him no access to unique trade information or exclusive access to Pioneer's customers, *id. at 6-8*; and (3) the non-compete clause provides Pioneer protections that are unreasonable because it includes overly broad place limitations concerning where he could work, *id. at 8-10*.

DeVries also seeks summary judgment on his claim that Pioneer breached the Agreement by failing to pay double bonuses.  *Id. at 10*.

He argues that he continued to earn double bonuses by commuting to jobs more than 600 miles, round trip, between February 13, 2011, and August 28, 2013. Because Pioneer did not pay him double bonuses for those trips, DeVries argues, Pioneer owes him $118,149.26. *Id. at 10-11*. He also argues that, because of this breach of the Agreement, Pioneer is barred from enforcing the non-compete provision of the Agreement. *Id. at 11*.

Finally, DeVries argues that he is entitled to attorneys' fees and costs. As the prevailing party, he argues, he should be awarded attorneys' fees and costs under the Agreement, the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and Montana law. *Id. at 11-13*.

In response, Pioneer argues generally that genuine issues of material fact preclude summary judgment on DeVries' claims. *Pioneer's Resp. Br. (ECF 24) at 7*. Specifically, Pioneer argues that: (1) the Agreement's non-compete clause is not an absolute restraint on trade because it was sufficiently limited in scope and time, *id*.; (2) the non-compete provision is a legally permissible partial restraint on trade because it is reasonable in that it is restricted respecting time or place, it is based on good consideration, and it is reasonable in that it affords

fair protection to the parties' interests and does not interfere with the public's interest, *id. at 7-11*; (3) DeVries overstates the limitations the non-compete clause places on him because wireline engineers do more than work only where there is oil and gas production, *id. at 11*; (4) the non-compete clause serves Pioneer's legitimate business interest because DeVries remains employed with Pioneer, which performs "unique techniques and procedures" some of which "were and remain proprietary and different from competitors' practices[,]" and because Pioneer has a client base that it has an interest in maintaining, *id. at 11-13*; (5) it paid DeVries double bonuses to which he was entitled under the Agreement but eliminated double bonuses in favor of increased standard bonus percentages when it reorganized its bonus payment system and DeVries neither expressed concern for this change nor provided Pioneer with any documentation seeking payment of a double bonus after February 2011, *id. at 13*; and (6) DeVries is not entitled to attorney's fees or costs because "no efforts have been made to enforce the non-compete provision[,]" DeVries remains working for Pioneer, and his claims are not ripe, *id. at 13-14*.

In reply, DeVries first argues that Pioneer has failed to raise any

material facts that are in dispute because: (1) Pioneer filed its Statement of Disputed Facts three days after it filed its response brief in violation of Local Rule 56.1(b), which requires simultaneous filing of those documents, *DeVries' Reply Br. (ECF 27) at 2*; and (2) Pioneer further violated Local Rule 56.1(b) by failing to provide pinpoint cites for all of DeVries' presented facts that it opposes and by relying on the defective affidavit of Martin O'Neil, who failed to base his statements on personal knowledge, *id. at 2-3*.

Second, DeVries argues that he is entitled to summary judgment on his claim respecting the non-compete clause. He argues that the clause is void and unenforceable as a full restraint on trade and that Pioneer's arguments that DeVries received valuable consideration and about the territory at issue are irrelevant. *Id. at 4.* He also argues that Pioneer's position that it has a legitimate business interest in enforcing the non-compete provision rests entirely on O'Neil's affidavit, which is defective. *Id*.

Third, DeVries argues that he is entitled to summary judgment on his claimed entitlement to double bonuses because Pioneer admits that it previously paid them to him and that there have been no

amendments or addendums to the Agreement. Pioneer's position that it had the right to unilaterally change the terms of its written contract with DeVries in February 2011, he argues, is unsupported by any authority or evidence, and thus fails. Thus, he argues, he is entitled to double bonuses for the period at issue. *Id. at 5-6.*

Finally, DeVries argues that he is entitled to attorney's fees and costs under both the Agreement and the Declaratory Judgment Act. *Id. at 6-7.*

## III. **APPLICABLE LAW**

### A. **Summary Judgment Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

**B.    Application of Montana Law**

As noted, the Court's jurisdiction over this action is based on diversity of citizenship. Thus, the Court must apply the substantive law of the forum state – Montana. *Medical Laboratory Mgmt. Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 812 (9th Cir. 2002).

In actions based on diversity jurisdiction, the federal court "is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.*, 615 F.2d 857, 861 (9th Cir. 1980). Federal courts "are bound by the pronouncements of the state's

highest court on applicable state law." *Appling v. State Farm Mutual Auto. Ins. Co.*, 340 F.3d 769, 778 (9th Cir. 2003) (citation omitted). But when an issue of state law arises and "the state's highest court has not adjudicated the issue, a federal court must make a reasonable determination of the result the highest state court would reach if it were deciding the case." *Medical Laboratory Mgmt. Consultants*, 306 F.3d at 812 (citations omitted). In doing so, the federal court must "look to existing state law without predicting potential changes in that law." *Ticknor v. Choice Hotels Int'l, Inc.*, 265 F.3d 931, 939 (9th Cir. 2001) (citation omitted).

## C. <u>Montana Law on Non-Compete Agreements</u>

"Montana law strongly disfavors covenants not to compete." *Wrigg v. Junkermier, Clark, Campanella, Stevens, P.C.*, 265 P.3d 646, ¶ 11 (Mont. 2011). Because Montana's public policy disfavors agreements in restraint of trade, courts are to construe such non-compete agreements strictly. *Access Organics, Inc. v. Hernandez*, 175 P.3d 899, ¶ 16 (Mont. 2008) (citation omitted).

Montana statutory law reflects this policy. Section 28-2-703, MCA, provides: "Any contract by which anyone is restrained from

exercising a lawful profession, trade, or business of any kind, otherwise than is provided for by 28-2-704 or 28-2-705, is to that extent void." The two statutory exceptions to § 28-2-703's general prohibition on such restraint involve instances in which a business' goodwill is being sold (§ 28-2-704) or a partnership is being dissolved (§ 28-2-705).[3]

But even in circumstances in which the foregoing two statutory exceptions do not apply, "section 28-2-703 is not an absolute prohibition against covenants not to compete." *American Nat'l Prop. and Cas. Co. v. Camp*, 2011 WL 4036148, *2 (D. Mont., Sept. 12, 2011) (*citing H&R Block Tax Servs. v. Kutzman*, 681 F.Supp.2d 1248, 1251 (D. Mont. 2010) and *Access Organics*, 175 P.3d at 902). The Montana Supreme Court has "upheld agreements which impose reasonable restrictions on trade." *Access Organics,* 175 P.3d at ¶ 16. The supreme court in *Access Organics* set forth the analytical framework courts are to apply when evaluating a non-compete agreement's reasonableness as follows:

> To be upheld as reasonable, a covenant not to compete must meet three requirements:
> (1) [I]t must be partial or restricted in its operation in respect either to time or place;

---

[3]Although the employment agreement was effective on the same day as the Stock Purchase Agreement, neither party argues that either statutory exception applies here.

> (2) it must be on some good consideration; and
> (3) it must be reasonable, that is, it should afford
> only a fair protection to the interests of the party
> in whose favor it is made, and must not be so
> large in its operation as to interfere with the
> interests of the public.

*Id*. (*citing Montana Mountain Products v. Curl*, 112 P.3d 979, ¶ 11 (Mont. 2005) and *O'Neill v. Ferraro*, 596 P.2d 197, 199 (Mont. 1979)); *see also Wrigg*, 265 P.3d at ¶ 12 (*citing Mungas v. Great Falls Clinic, LLP*, 221 P.3d 1230, ¶39 (Mont. 2009) and *Dobbins, Deguire & Tucker*, 708 P.2d 577, 580 (Mont. 1985)). "An agreement not to compete must satisfy all three prongs of the reasonableness test in order to be upheld." *Id. at ¶ 28* (citation omitted).

"[T]he party seeking to enforce the non-compete agreement . . . bears the burden of proving that the agreement does not violate § 28–2–703, MCA." *Id*. (*citing Daniels v. Thomas, Dean & Hoskins, Inc.*, 804 P.2d 359, 370 (Mont. 1990); *State Med. Oxygen v. Amer. Med. Oxygen*, 782 P.2d 1272, 1275 (Mont. 1989); *First American Ins. Agency v. Gould*, 661 P.2d 451, 454 (Mont. 1983)).

## IV. DISCUSSION

### A. DeVries' Challenges to Pioneer's Response to His Motion

The Court must address two challenges DeVries made to Pioneer's response to his summary judgment motion. First, the Court declines to accept DeVries' invitation to disregard Pioneer's Statement of Disputed Facts because Pioneer filed it three days late and did not file it simultaneously with its timely-filed response brief in violation of Local Rule 56.1(b).

The Ninth Circuit has "repeatedly held that a motion for summary judgment cannot be granted simply because the non-moving party violated a local rule." *Couveau v. American Airlines, Inc.*, 218 F.3d 1078, 1081-82 (9th Cir. 2000) (citing cases). It is well-settled that cases should be decided on their merits whenever reasonably possible. *See Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985).

The Court does not to condone violations of the Local Rules that thwart the administration of justice or that work unfair prejudice upon opposing parties. But here, DeVries has neither argued that he has suffered prejudice nor shown any actual prejudice resulting from the

three-day delay in Pioneer's filing of its Statement of Disputed Facts. And DeVries has not moved to strike the statement despite having had ample time to do so. Under the circumstances, the Court deems it appropriate to consider Pioneer's statement of disputed issues in addressing DeVries' summary judgment motion.

Second, respecting DeVries' argument that the affidavit of Martin O'Neil ("O'Neil") contains statements not based on personal knowledge and are not admissible in evidence, the Court is not persuaded. "At summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial." *Nevada Dep't of Corr. v. Greene*, 648 F.3d 1014, 1019 (9th Cir. 2011) (*citing Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001)) (internal quotations omitted). The focus is on the admissibility of the evidence's contents, not its form. *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003); *Fonseca v. Sysco Food Servs. of Arizona, Inc.*, 374 F.3d 840, 846 (9th Cir. 2001).

The Ninth Circuit recently noted that "the requirement of personal knowledge imposes only a 'minimal' burden on a witness; if 'reasonable persons could differ as to whether the witness had an

adequate opportunity to observe, the witness's testimony is admissible.'" *Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1045 (9th Cir. 2013) (*quoting* 1 McCormick on Evidence § 10 (Kenneth S. Broun, ed., 7th ed. rev. 2013)).  Moreover, "[a]t summary judgment, the threshold is particularly low because all "justifiable inferences" must be drawn in favor of the nonmoving party."  *Id.* (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Here, O'Neil's affidavit, while not a model of clarity, states that he was the founder of Competition Wireline Services, Inc., and that the shareholders of Prairie (which did business as Competition Wireline Services, Inc. (*ECF 5-1 at 10-11*)), including DeVries and other shareholders in Prairie, sold shares in Competition to Pioneer.  *ECF 25 at ¶¶ 2-3.*  He goes on to opine, "based upon [his] personal knowledge and belief" (*id. at ¶ 1*), respecting the principal issues relevant to the instant summary judgment motion.  From these statements, the Court can reasonably infer that O'Neil has personal knowledge about the matters at issue, and is therefore competent to execute his affidavit based on his personal knowledge and belief.  Under the foregoing

authority, these conclusions are particularly evident at the summary judgment stage of the proceedings. *Strong*, 724 F.3d at 1045.

## B. Analysis of DeVries' Arguments Respecting Non-Complete Clause

First, respecting DeVries' contention that the non-compete clause is a full or absolute restraint on trade, genuine issues of material fact preclude summary judgment. For example, DeVries states in his affidavit that "job opportunities for wireline engineers occur where oil and gas are being extracted." *DeVries Aff. (ECF 23) at ¶ 11.* He further opines that Pioneer "has operations in most oil and gas producing states in this country." *Id. at ¶ 10.* The implication from these statements is that his ability to pursue his profession or trade as a wireline engineer would be completely restricted if the non-compete clause were deemed valid.

But the O"Neil affidavit states that, although wireline engineers work where there is oil and gas production, they also work "where there is oil and gas exploration as well as in various other parts of the country." *O'Neil Aff. (ECF 25) at ¶ 2-3. Id. at ¶ 15.* From this evidence, it can reasonably be inferred that the non-compete clause would not completely restrict DeVries from working, as he maintains. Thus, the

Court cannot conclude on the current record that the non-compete provision is an absolute restraint on trade and thus void as a matter of law.

In any event, the non-compete clause also is clearly limited in duration to one year after DeVries no longer works for Pioneer. Because the non-compete clause is limited to one year, the Court cannot conclude that it imposes an absolute or full restraint on trade. *See, e.g., American Nat'l Prop. and Cas. Co.*, 2011 WL 4036148 at *2 (upholding covenant barring competing for one year within 25-mile radius); *H&R Block v. Kutzman*, 681 F.Supp.2d at 1251 (upholding covenant barring franchisee from competing within 45-mile radius for one year).

Second, fact issues render summary judgment inappropriate respecting DeVries' position that the non-compete clause serves no legitimate business interest for Pioneer. For example, DeVries states in his affidavit that: (1) his job with Pioneer is not unique and that competitors do all the same work he does, *ECF 23 at ¶ 18*; (2) nothing exists that he could disclose that would be of any use to any other company or that would compromise Pioneer, *id. at ¶ 19*; (3) Pioneer

does not depend on DeVries' relationships with customers, who simply call around to companies like Pioneer when they need wireline engineering services until they find someone who can do the work, *id. at ¶ 20*; (4) if customers call Pioneer, they do not ask for DeVries or any other particular wireline engineer but get whoever is on call at the time, *id. at ¶ 21*; and (5) if DeVries were not with Pioneer, it would not lose any business because customers would continue to simply call around until they find someone who can do the work, *id. at ¶ 22*.

But O'Neil, in his affidavit, disputes DeVries' statements, opining that Pioneer would suffer a significant detriment if certain information was disclosed to third parties, including: (1) employee names and contact information; (2) employee abilities and pay rates; (3) customer names and contact information; (4) customer pricing; (5) the nature of services provided by Pioneer to its customers; (6) future work to be performed by Pioneer; and (7) customer demands and locations of work to be performed. *ECF 25 at ¶ 11*.

O'Neil also states that Pioneer would likely lose business if DeVries were to leave Pioneer because: (1) many customers call Pioneer before calling other companies when they need engineering services

and frequently ask for a specific engineer based on prior experience with or on the reputation of an individual engineer; (2) certain Pioneer clients specifically ask for DeVries or another specific engineer for wireline services; and (3) a significant portion of wireline service business is developed based on relationships between customers and wireline engineers. *Id. at ¶ 13.*

The foregoing conflicting evidence concerning whether Pioneer has a legitimate business interest in barring DeVries from working for its competitors creates genuine issues of material fact that render summary judgment inappropriate.

Third, respecting DeVries' argument that the non-compete clause is not a reasonable partial restraint on trade, the Court again concludes that fact issues preclude summary judgment. As noted above, DeVries does not argue that the clause is insufficiently limited in operation either as to time or place, or that it is not based on some good consideration. *ECF 21 at 8.* Rather, he argues that it fails the third prong of the three-part test for reasonableness because it provides Pioneer protections that are unreasonable in that it places overly broad place limitations concerning where he could work. Id. at 8-10.

DeVries' argument centers on his position that wireline engineers perform work that is limited to those locations where there is oil and gas production. Because he is limited to working in such locations, and because Pioneer has facilities nationwide in all or nearly all such locations, he argues, enforcement of the non-compete clause will essentially prevent him from earning a living. But, as already noted above, genuine issues of material fact exist respecting the types of places wireline engineers might work. As noted, Pioneer has presented evidence that, although wireline engineers work where there is oil and gas production, they also work "where there is oil and gas exploration as well as in various other parts of the country." *ECF 25 at ¶ 15.* So it can reasonably be inferred that the non-compete clause would not completely restrict DeVries from working as a wireline engineer. And, as noted, the non-compete clause is limited to one year. Thus, the Court concludes that summary judgment is not appropriate on DeVries' assertion that the non-compete clause is unreasonable. *See, e.g., Mungas v. Great Falls Clinic, LLP*, 221 P.3 1230, ¶¶ 39-40 (Mont. 2009) (remanding for trial issue of whether covenant not to compete was reasonable because issue required factual determinations).

### C. Analysis of DeVries' Arguments Respecting His Claim for Double Bonuses

Genuine issues of material fact also preclude summary judgment on DeVries' claim that Pioneer breached the Agreement by failing to pay him double bonuses. As noted, it is undisputed that DeVries received the bonuses from March 2008 until February 13, 2011, when the bonuses stopped. And the parties agree that shortly after August 28, 2013, DeVries no longer traveled the required distances to earn such bonuses. Thus, the only period at issue during which DeVries claims entitlement to double bonuses is between February 13, 2011, and August 28, 2013.

In his affidavit, DeVries states that: (1) he has kept records of jobs that required him to travel the requisite distance – 600 miles round trip – to be eligible for the double bonuses, *ECF 23 at ¶ 13*; (2) he traveled from Billings to job sites more than 600 miles round trip from February 13, 2011, until August 28, 2013, *id. at ¶ 15*; and (3) the jobs that required round trip travel exceeding 600 miles during the relevant time are listed on a spreadsheet attached as Exhibit C (*ECF 23-3*) to his affidavit, *id. at ¶ 16*.

O'Neil, however, states in his affidavit that: (1) "[t]he double-bonus payments were eliminated in February 2011 except for holiday double-bonues ... [and] [i]nstead Pioneer increased the job bonus percentages, *ECF 25 at ¶ 6*; (2) all field engineers, including DeVries, were required to submit their own travel records or "bonus sheets" indicating the mileage they traveled to a jobsite, *id. at ¶ 7*; and (3) after the bonus structure change in 2011, he was not aware of any weekly bonus sheets showing DeVries exceeded the requisite distance that previously permitted a double bonus, *id. at ¶ 9*.

From this conflicting evidence, genuine issues of material fact exist that preclude summary judgment. For example, from the foregoing evidence, the fact finder might conclude that the parties orally modified the Agreement respecting bonuses and acted on that oral modification. *See* MCA § 28-2-1602 ("A contract in writing may be altered by a contract in writing or by an executed oral agreement, and not otherwise."). If both parties fully performed and DeVries received increased job bonus percentages, DeVries "may be estopped from asserting damages arising from breach of the original contract." *DeNiro v. Gasvoda*, 982 P2d 1002, at ¶ 13 (Mont. 1999) (citation

omitted).  The underlying factual determinations for whether this occurred are appropriately left to the trier of fact.  Summary judgment on DeVries claim for breach of the Agreement should be denied.

## D.   DeVries' Claim for Attorney's Fees

In light of the foregoing, DeVries claim for attorney's fees is premature and summary judgment respecting that claim should be denied.

## V.   CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that DeVries' summary judgment motion (*ECF 20*) be DENIED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties.  The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after entry hereof, or objection is waived.

DATED this 18th day of August, 2015.

/S/ Carolyn S. Ostby
United States Magistrate Judge